## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VINYL TECHNOLOGIES, INC., <br><br>       Plaintiff, <br><br>   v. <br><br> LASER MECHANISMS, INC., <br><br>       Defendant. | |
| LASER MECHANISMS, INC., <br><br>       Counterclaimant, <br>   v. <br><br> VINYL TECHNOLOGIES, INC., a.k.a. VYTEK, <br><br>       Counterclaim Defendant, <br><br> and <br><br> DIRK BURROWES, an individual, <br><br>       Third-Party Defendant. | Civil Action No. 4:13-cv-40017-TSH <br><br> Honorable Judge Hillman |

### DEFENDANT/COUNTERCLAIMANT LASER MECHANISMS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Federal Rule of Civil Procedure 65, Defendant/Counterclaimant Laser Mechanisms, Inc. ("Laser Mech") respectfully seeks a temporary restraining order to stop Plaintiff/Counterclaim Defendant Vinyl Technologies, Inc. ("Vytek") and Third-party Defendant Mr. Dick Burrowes ("Mr. Burrowes") (hereinafter collectively "the Vytek Parties") from further unauthorized use of (1) Laser Mech's valuable FIBERCUT trademark and (2) photographic images of Laser Mech's FIBERCUT/FIBERMINI processing head until such time as this Court has ruled on Laser Mech's Motion for

Preliminary Injunction.  Laser Mech requests this relief because the EASTEC trade show is scheduled to occur in less than one week, and on May 7, 2013, counsel for the Vytek Parties confirmed that Vytek does intend to promote its complete fiber laser cutting system at that show with brochures using the FIBERCUT mark (although counsel for the Vytek Parties has indicated that no equipment bearing the mark or other marketing materials will be exhibited).  As noted by counsel for Laser Mech at the preliminary injunction hearing, the EASTEC trade show is expected to be well-attended by Laser Mech's customers.

Declarations on file in this action demonstrate that actual confusion has already resulted from the Vytek Parties' promotion at trade shows, and that is sure to result again if they are permitted to continue promoting their FIBERCUT laser systems with marketing materials, as exemplified below:



Accordingly, to avoid immediate and further irreparable harm to its mark and business, Laser Mech requests that the Vytek Parties be prevented from displaying or distributing any brochures or other marketing materials at the EASTEC trade show that display the FIBERCUT mark and/or Laser Mech's product images.  Because the Vytek Parties apparently will not be exhibiting equipment displaying the FIBERCUT mark at the EASTEC trade show, they also should be ordered to "take down" the web pages for its EASTEC booth, which displays equipment with the FIBERCUT mark.

### Relevant Procedural Facts

On March 8, 2013, Laser Mech filed a motion with this Court seeking a preliminary injunction to stop the Vytek Parties from usurping the hard-earned goodwill that Laser Mech has created in its FIBERCUT mark and products.  *See* **Dkt 16**.  The motion was supported by three declarations showing actual confusion, including, importantly, examples of actual confusion of attendees of trade shows where the Vytek Parties have promoted product using Laser Mech's FIBERCUT mark and product images.  *See* **Dkt. 17-1** at ¶ 45**, Dkt. 17-24** at ¶¶ 4-5 **and Dkt. 17-25**.  On March 22, 2013, the Vytek Parties filed an opposition to Laser Mech's motion.  *See* **Dkt 25**.  On April 5, 2013, Laser Mech filed a Reply in support of its motion for preliminary injunction, *see* **Dkt 34,** and on April 8, 2013, a preliminary injunction hearing was held before this Honorable Court.  *See* **Dkts. 37 and 41.**

At the outset of the April 8, 2013 hearing, Laser Mech's counsel notified this Honorable Court that the Vytek Parties were scheduled to attend the EASTEC trade show and to promote their new FIBERCUT offering, that at least 11 of the exhibitors listed as attending were Laser Mech's customers and that approximately a third of the

top-attending companies of that trade show have been Laser Mech customers.  *See* **Ex. A** Hearing Tr. at p. 7-8.  That trade show is now scheduled to start in *less than one week* on May 14, 2013.  *See* **Ex. B,** printouts from the EASTEC trade show website, including Vytek's booth listing.

Pursuant to Fed. R. Civ. P. 65(b), on May 6, 2013, counsel for Laser Mech contacted counsel for the Vytek Parties to inquire whether they still intended to promote their FIBERCUT product at the EASTEC trade show and, if so, if the Vytek Parties would agree to refrain from promoting any product under the FIBERCUT mark until the Court has ruled on the pending motion for a preliminary injunction.  On May 7, 2013, counsel received confirmation that the Vytek Parties would not agree to that relief. Their counsel represented that, while the Vytek Parties would not be exhibiting any equipment showing the FIBERCUT mark, Vytek does intend to promote its laser cutting system at the EASTEC show with brochures using the FIBERCUT mark.

Laser Mech requests this restraining order simply to prevent the Vytek Parties from displaying or distributing such brochures at the EASTEC trade show.  Additionally, since they apparently will not be exhibiting the FIBERCUT laser cutting system, Laser Mech requests that the webpages for their EASTEC booth that display the FIBERCUT mark be taken down.  Because the Court has received evidence, as well as written and oral argument, from all parties on the appropriateness of injunctive relief, a hearing on Laser Mech's limited requested for temporary relief is not requested at this time.  Laser Mech seeks the immediate relief requested in this motion pending a decision on its motion for preliminary injunction, and continues to ultimately request the full relief

requested in its motion for preliminary injunction once the Court makes a decision on that motion.

### THE APPLICABLE LEGAL STANDARD COMPELS ISSUANCE OF A TEMPORARY RESTRAINING ORDER

A district court considering a request for a temporary restraining order uses the same standard for determining whether to issue a preliminary injunction. *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1160 (D. Mass. 1986) (citing 11 Wright & Miller, *Federal Practice and Procedure*:  Civil Section 2951 (1973)).  In the trademark infringement context, courts have consistently granted requests for a temporary restraining order pending the determination of a motion for a preliminary injunction.  *See, e.g., Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987) (granting temporary restraining order pending consideration of preliminary injunction motion in trademark infringement case).

A temporary restraining order is appropriate and should be granted here because the **evidence** submitted by all parties, demonstrates that: (1) Laser Mech has a strong likelihood of success in proving its case; (2) Laser Mech will be irreparably injured if the Vytek Parties are not prevented from displaying or distributing brochures or other marketing materials at the EASTEC trade show that display the FIBERCUT mark; (3) the threatened injury to Laser Mech -- who has made an enormous investment in the reputation associated with its FIBERCUT trademark -- far outweighs any possible harm to the Vytek Parties if they are prevented from distributing brochures displaying the FIBERCUT mark and Laser Mech's product images, especially where they easily could have selected another name for their new product and have freely admitted that they

knew of Laser Mech's FIBERCUT mark at the time they adopted its use (*see* **Ex. A**, Hearing Tr. at p. 60-61); and (4) granting the temporary injunction protecting Laser Mech's intellectual property rights would not be adverse to the public interest.

### A.    Laser Mech is Likely to Succeed on the Merits

#### 1.    The FIBERCUT Mark is Distinctive and Protectable

Laser Mech plainly demonstrated that it is likely to succeed in showing that the FIBERCUT mark is a protectable trademark.   Laser Mech submitted to this Court a "bumper crop" of evidence showing that its mark has most certainly acquired distinctiveness.  ***See*** **Dkt 17-1** Taggart Declaration**.**  At no time prior to the hearing, at the hearing, or after the hearing have the Vytek Parties ever challenged the factual assertions set forth in Mr. Taggart's declaration.   To be clear, none of the evidence presented by Vytek challenges in any way the evidence of secondary meaning presented by Laser Mech.   For example, Mr. Burrowes and Mr. Shiner do not dispute that Laser Mech introduced the FIBERCUT brand into commerce in June 2009, nearly 4 years ago.   They do not dispute that Laser Mech widely markets and promotes its FIBERCUT brand at tradeshows throughout the United States and that these tradeshows are widely attended by both Laser Mech and Vytek customers.   They do not dispute that Laser Mech promotes its FIBERCUT processing heads in various trade publications and advertises them in various trade publications and on the Internet.   They do not dispute that Laser Mech's FIBERCUT processing heads have been featured in numerous third-party industry publications.   They do not dispute that Laser Mech's FIBERCUT processing heads are highly respected in the industry.   Most importantly,

they do not dispute in any way that, in large part through the marketing efforts of Laser Mech, customers refer to the trademark FIBERCUT.

In addition, none of the cases on which the Vytek Parties rely even remotely support the Vytek Parties' argument that this evidence does not compel a finding of secondary meaning. The Vytek Parties rely heavily on the case of *Unleashed Doggie Daycare, LLC v. Petco Animal Supplies Stores, Inc.*, 828 F. Supp. 2d 384 (D. Mass. 2010) to argue that Laser Mech has not presented sufficient evidence to establish second meaning. However, *Unleashed Doggie Daycare* is distinguishable on its face because in that case, the plaintiff *conceded* that its advertising efforts had not created an association between its services and its purported mark. *See* 828 F. Supp.2d at 392. In this case, Laser Mech has presented more than ample evidence of advertising and marketing by Laser Mech that has developed secondary meaning in the FIBERCUT mark and has resulted in customers referring to the trademark FIBERCUT.[1]

> **2. Laser Mech Has Demonstrated a Strong Likelihood of Confusion**

Laser Mech also presented evidence on each of the eight likelihood of confusion factors that compels a finding of a strong likelihood of confusion.

---

[1] Notwithstanding Laser Mech's substantial evidence demonstrating that the FIBERCUT mark has acquired distinctiveness, the Court alternatively may determine that the mark is inherently distinctive. In that regard, at the preliminary injunction hearing, counsel for the Vytek Parties argued that substantial authority has held that deference should be given to the Trademark Office's letters initially refusing registration based on a finding that the FIBERCUT mark is merely descriptive. However, the cases cited by the Vytek Parties' counsel (which could be deciphered from the hearing transcript), did not deal with initial refusals by the Trademark Office, which are initial actions pending further argument from the applicants (and do not consider acquired distinctiveness), as is the situation *sub judice*. *See Linn Camera Shop, Inc. v. Meijer, Inc.*, 559 F. Supp. 175, 181 (W.D. Mich. 1982) (addressing **final** Trademark Office finding on appeal); *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F.Supp. 326, 332 (N.D. Ga. 1967) (addressing refusal by Examiner that was made **final**); *Professional Economics, Inc. v. Professional Economic Servs., Inc.*, 12 Mass. App. Ct. 70, 74, n.6, 421 N.E.2d 1221 (1981) (addressing **Trademark Trial and Appeal Board decision**, as well as Trademark Office refusal to which applicant responded by amending application). *But see Star Indus. v. Bacardi & Co.*, 2003 U.S. Dist. LEXIS 23411,*15, 25, 71 U.S.P.Q.2D (BNA) 1026 (S.D.N.Y. 2003) (addressing **abandoned** refusal).

(1)     *Similarity of the Marks:*   The similarity of the marks weighs strongly in Laser Mech's favor because the two marks are **identical** and even use **the same typeface**.  The Vytek Parties do not dispute that the **marks are identical**.  They do not because they cannot.  The identical name "FiberCut" is being used by both companies. Both marks use identical spelling, and both marks sound identical.

(2)     *Similarity of the Goods:*     Both parties are using the FIBERCUT mark on forming and fabricating laser products.  Moreover, both parties are using the FIBERCUT mark on types of products that can be and are combined.  In addition, consumers are likely to see their products as "related" because processing heads and cutting systems are regularly advertised in the same magazines, and in this case, both parties' FIBERCUT products have actually been promoted and exhibited at the same trade show (in fact, in the same section of the same trade show).  *See, e.g., Perfection Fence Corp. v. Fiber Composites LLC,* No. 04-12094-GAO, 2005 U.S. Dist. LEXIS 2157, *9-10 (D. Mass. Feb. 10, 2005) (evidence that products at issue were often advertised and exhibited together, including at the same trade shows, showed that such products were sufficiently related and that, if sold under similar marks, were likely to be thought by the consuming public as connected with the same source).

(3) *Similarity Between the Parties' Channels of Trade* and (4) *Relationship Between the Parties' Advertising:*     The channels of trade is a factor that weighs strongly in Laser Mech's favor because both products are marketed at the same trade shows to the same potential purchasers.  Vytek's counsel concedes, as it must, that the channels of trade and advertising, trade shows, trade publications and web sites are similar.

(5)   *Evidence of Actual Confusion:*   Even though the Vytek Parties have only recently introduced their FIBERCUT laser system, actual confusion has already occurred, including, importantly, examples of actual confusion of attendees of trade shows where the Vytek Parties have promoted their product.   ***See generally* Dkt. 17-1, Taggart Decl. at ¶ 45; Dkt. 17-24, Ball Decl. at ¶ 5 and Dkt. 17-25, Weiss Decl. at ¶¶ 6-7.**

(6)   *Defendants' Intent in Adopting the Mark:*   Given the prior relationship between the parties, there can be no doubt but that the purpose of the Vytek Parties' selection of the FIBERCUT mark was to trade deliberately on the goodwill associated with Laser Mech's FIBERCUT mark.  *See Caterpillar Tractor Co. v. Earthworm Tractor Co.*, 212 U.S.P.Q. (BNA) 380, 383 (S.D.N.Y. 1981) ("Where, as here, there is little to distinguish the marks themselves and the prior mark is a long-established one of which the newcomer was aware, doubts about intent are resolved against the newcomer, and a reasonable explanation of its choice is essential to establish lack of intent to deceive.").  As this Court observed during the hearing, the Vytek Parties have presented to this Court no reasonable explanation for their choice of the FIBERCUT mark.  ***See* Ex. A, Hearing Tr. 60-61**.  Not only did the Vytek Parties know of Laser Mech's FIBERCUT mark, they utilized the same type style and ***even included photographs of Laser Mech's processing heads conspicuously*** in the marketing, promotional and other advertising materials for their new laser cutting systems.

(7)   *Classes of Prospective Purchasers:*   The Vytek Parties argue that the sophistication of customers is sufficient in this instance to prevent any actual customer confusion.  But "[t]he fact that a buyer is an expert in his or her field does not

necessarily dictate that the person is correspondingly cautious and wary in distinguishing similar trademarks." 4 J. *Thomas McCarthy, McCarthy on Trademarks and Unfair Competition* § 23:102 (4th ed. 2013).

> Thus, professional buyers in the category of plant engineers, maintenance directors, and plant managers who purchase specialized computer software may well be informed and discriminating individuals. However, they are likely to be confused between the marks TMM and TMS because, while sophisticated in their field, "these purchasers are [not] infallible in their recollection of trademarks.)

*Id. See also CAE Inc. v. Clean Air Engineering, Inc.* 267 F.3d 660, 681 (7th Cir. 2001)(finding that the convergence of the parties' technologies made it more likely that even an informed and sophisticated consumer would mistakenly attribute the parties' products and services to a common source.) Here, the Vytek Parties have presented no evidence that laser industry customers are likely to research brand affiliations. Nor would they be. The laser industry is a trusting industry, made up of consumers with varying sophistication, in which customers are not on the look-out for possible trademark infringement. Indeed, the Vytek Parties' argument is belied by the fact that Mr. Weiss, a sophisticated industry participant, apparently believes Vytek's FiberCut system is using a Laser Mech processing head, when it is not. ***See*** Dkt. 17-25.

Regardless, it is well-established that evidence of actual consumer confusion is difficult to find (and in this case would more likely be in the possession of Vytek not Laser Mech) and is in no way required, particularly because the infringement in this case has only recently started. *See Boriquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 120 (1st Cir. 2006)("To begin, a trademark holder's burden is to show likelihood of confusion, not actual confusion. While evidence of actual confusion is 'often deemed the best evidence of possible future confusion,'…proof of actual

confusion is not essential to finding likelihood of confusion."); *see also Tanel Corp. v. Reebok Int'l, Ltd.*, 774 F. Supp. 49, 55, 16 U.S.P.Q.2D (BNA) 2034 (D. Mass 1990) (finding it "neither surprising nor significant that plaintiff ha[d] not presented evidence of actual confusion" on its motion for a preliminary injunction where defendant's accused shoes had only recently been delivered to retailers and plaintiff was just entering the retail market).

(8)     *Strength of Laser Mech's Mark:*     Although the Vytek Parties attempted to present evidence of third-party use to show that the FIBERCUT mark was incapable of protection, this argument is not supported by even a cursory review of the evidence submitted by Vytek.  Laser Mech demonstrated conclusively that none of the evidence presented relates in any way to the United States market.  All of the third-party uses that Vytek relies upon are either uses by foreign entities located abroad, and/or they involve wholly unrelated industries or products.  ***See generally*** **Dkts. 25-1 and 25-2, Burrowes Decl. at Exhibit F** (Swedish company), **Exhibit G** (Canadian company), **Exhibit G** (German company), **Exhibit I** (Chinese company), **Exhibit J** (German company), **Exhibit K** (article regarding same German company referenced in Exhibit J and relating to process for cutting and doping fibers), **Exhibit L** (Australian company and relating to a circular saw), **Exhibit M** (system that simulates breaks in fiber communication lines); **and Exhibit N** (Saudi Arabian company and relating to power tools).

Laser Mech has invested heavily in the promotion of its FIBERCUT mark and that effort has resulted in significant sales generating tremendous strength in the mark. The Vytek Parties did not even attempt to present evidence demonstrating otherwise. Today, Laser Mech's FIBERCUT processing heads are well-known and the "gold

standard" among processing heads in the laser industry.  As such, this final factor necessarily favors Laser Mech.

### B. Laser Mech is Likely to Suffer Immediate and Irreparable Injury if the Vytek Parties Are Not Temporarily Restrained

The declarations on file demonstrate that the Vytek Parties' marketing of their product at trade shows has already caused Laser Mech irreparable injury in the form of actual confusion. ***See generally* Dkt. 17-1 Taggart Decl. at ¶ 45** and **Dkt. 17-24 Ball Decl. at ¶¶ 4-5.**  These declarations clearly show that Laser Mech will suffer immediate and irreparable injury in the form of further actual confusion if the Vytek Parties are not restrained from displaying or distributing brochures at the EASTEC trade show that display Laser Mech's FIBERCUT mark or product images.  As counsel for Laser Mech stated at the preliminary injunction hearing, at least 11 of Laser Mech's customers are expected to attend the EASTEC trade show, and Laser Mech's customers have comprised at least a third of the top-attending companies.  Thus, the harm to be inflicted on Laser Mech if the Vytek Parties are not restrained will not only be immediate and irreparable, but also substantial.

Notwithstanding the foregoing, the likelihood of success is so clearly established in the present case that irreparable harm should be presumed.  *See Walter Mercado-Salinas*, 672 F.3d at 19 (quoting *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989)) ("'In a trademark case, the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling.'").  Similarly, "'where a plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public,' and the defendant's 'deliberate conduct' in this regard is of an 'egregious nature,' a presumption arises 'that consumers are, in fact, being deceived.'" *Johnson &*

*Johnson Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992) (citing *Reserve Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.,* 926 F.2d 134, 140, 17 U.S.P.Q.2d (BNA) 1842 (2d Cir. 1991)).

Once an erroneous perception concerning the FIBERCUT mark is established, there is no fully effective remedy to reverse the consequence.  Any damage done to the FIBERCUT mark as the result of inferior products or service provided by the Vytek Parties would likely be devastating and irreversible.

   **C.**  **The Balance of the Equities Are in Laser Mech's Favor**

The balance of the equities here are plainly in Laser Mech's favor.  Laser Mech has invested enormous resources in its FIBERCUT mark whereas the Vytek Parties only recently began to market their new laser cutting systems and claim – although they presented no evidence to support their claim -- that they have sold a single infringing laser cutting system.   Certainly, the Vytek Parties are not likely to suffer any significant injury if they are prevented from distributing or displaying brochures or other marketing materials at the EASTEC trade show using the FIBERCUT mark and/or Laser Mech's product images.

   **D.**  **The Public Interest is Best Served by**
      **Temporarily Restraining the Vytek Parties**

The "public interest" factor also supports the grant of a temporary restraining order.  The public interest underlying the prohibition of trademark infringement and acts of unfair competition is to prevent confusion and deception, and to protect the goodwill a business has developed in its trademark.   It is not in the public interest to add to confusion by letting the Vytek Parties promote their product at another trade show using Laser Mech's FIBERCUT mark and product images.

**CONCLUSION**

For these reasons, all of the relevant factors for the Court to consider favor the grant of a temporary restraining order in this case.  For the foregoing reasons, Laser Mech respectfully requests that its motion for a temporary restraining order be granted.


Date:  May 8, 2013                      By:     /s/     Nicole Meyer_____
                                        Nicole M. Meyer (admitted *pro hac vice*)
                                        H. Jonathan Redway
                                        (admitted *pro hac vice*)
                                        **Dickinson Wright PLLC**
                                        1875 Eye Street, N.W., Suite 1200
                                        Washington, D.C.  20006
                                        Phone: (202) 457-0160
                                        Fax: (202) 659-1559
                                        Email: nmeyer@dickinsonwright.com
                                        Email: jredway@dickinsonwright.com

                                        John L. Welch, Esq., BBO # 522040
                                        Ann Lamport Hammitte, Esq., BBO #
                                           553263
                                        Lando & Anastasi
                                        One Main Street
                                        Cambridge, MA  02142
                                        Phone: (617)395-7000
                                        Fax (617)395-7070
                                        Email: jwelch@lalaw.com
                                        Email: ahammitte@lalaw.com

                                        **Attorneys for Defendant/Counter-
                                        Plaintiff**


**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)**

I certify that I contacted counsel for Vytek and Mr. Burrowes regarding the issues raised by this motion, but was unable to reach agreement.

                                        /s/ H. Jonathan Redway
                                        H. Jonathan Redway

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2013, I electronically filed the Motion and Memorandum in Support of a Temporary Restraining Order with the Clerk of the Court of the U.S. District Court for the District of Massachusetts using the ECF system, which will send notification of such filing to all parties/attorneys of record.


 _/s/ Nicole M. Meyer_